1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERMINAL FREEZERS INC., a
Washington corporation,

          Plaintiff,

    v.

U.S. FIRE INSURANCE, an admitted
insurer,

          Defendant.

CASE NO. C07-0090BHS

ORDER GRANTING
DEFENDANT U.S. FIRE
INSURANCE COMPANY'S
MOTION FOR SUMMARY
JUDGMENT, GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON
CHOICE OF LAW, AND
DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT ON CAUSATION

      This matter comes before the Court on Defendant U.S. Fire Insurance Company's

("U.S. Fire") Motion for Summary Judgment (Dkt. 27), Plaintiff's Motion for Summary

Judgment on Choice of Law (Dkt. 28), and Plaintiff's Motion for Summary Judgment on

Causation (Dkt. 30). The Court has considered the pleadings filed in support of and in

opposition to the motions and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff Terminal Freezers, Inc. ("Terminal Freezers") is a Washington

corporation with its headquarters in Arlington, Washington. Dkt. 26-2, Exh. 1 at 1.

Terminal Freezers runs a cold storage facility in Oxnard, California. *Id*. Areas of the

facility were damaged by ice, and Terminal Freezers made a claim for loss under three

commercial "all risk" property insurance policies issued by U.S. Fire. *Id*. U.S. Fire denied

the claim, contending that "[t]he exclusion for faulty design/workmanship precludes

coverage for loss or damage caused by construction defects" and because "there is no

1    coverage for the claimed ice damage . . . [because] the building was not first damaged by

2    a covered peril." Dkt. 26-17, Exh. 7 at 4.

3        Terminal Freezers filed suit in Washington state court for declaratory relief and

4    breach of contract. Dkt. 26-2, Exh. 1 at 2; Dkt. 1, Exh. A at 5. Terminal Freezers asks the

5    Court to interpret the U.S. Fire policies and rule as a matter of law that "Covered

6    Property" was damaged after an excluded cause (faulty, inadequate, or defective

7    construction) resulted in a "Covered Cause of Loss" (condensation). Dkt. 26-2, Exh. 1 at

8    2.  Terminal Freezers also seeks a declaration of coverage regarding the roles of

9    additional "Covered Causes" in causing the loss. *Id*. Terminal Freezers asks the Court to

10   declare that all costs of repair attributable to the resulting damage, all "Extra Expenses,"

11   and all "Debris Removal" costs are covered, and award damages for such costs and

12   expenses. Finally, Terminal Freezers seeks prejudgment interest, attorneys' fees, and

13   costs. *Id*. The following facts are undisputed:

14       The two freezer warehouses involved in Terminal Freezers' claim were built in

15   1994 and 1996. *Id*. The freezers are classified as a "Schneider system" or "interior-

16   exterior system," meaning that the roofing membrane serves as an exterior vapor barrier

17   and is also tied into a vapor retarder located on the interior face of the concrete walls. *Id*.

18   The walls are insulated with glass fiber batts. *Id*. On the inside, the walls are faced with

19   glass fiber panels with a vapor-permeable white facer. *Id*. The glass fiber panels are also

20   used on the ceiling. A ten-millimeter thick polyethylene plastic sheet was applied to the

21   inside face of the concrete panels to act as a vapor retarder and was secured near the top

22   of the wall with a wood nailer attached to a concrete wall. *Id*. A strip of rubber membrane

23   was located between the framing and concrete panels during construction in order to

24   provide continuity of the vapor retarder system because the polyethylene could not

25   effectively be placed between the roof framing supports and concrete walls. *Id*. The

26   rubber membrane and polyethylene plastic were sealed together several feet below the top

27

28

ORDER - 2

1    of the roof deck with mastic-like material and then secured to the wall with a wood

2    nailing strip. *Id*.

3          The parties agree that this construction was deficient in several respects. The

4    polyethylene or rubber vapor retarders were not adhered to the walls, allowing vertical

5    and lateral water vapor to enter the building. The vertical lap joints between the

6    polyethylene sheets were poorly assembled: wrinkles and ridges provided entry points for

7    water vapor. *Id*. Certain lap joints were unsealed in the rubber vapor retarder behind the

8    roof structural system on the west and east elevations. *Id*. The vapor retarder behind the

9    roof structural system on the west elevation contained breaches and tears. The wall

10   system vapor retarder was not tightly sealed to the roof membrane. *Id*. at 3. The parties

11   agree that the vapor retarder was not properly installed and caused excessive ice

12   formation. *Id*.

13         U.S. Fire seeks summary judgment on all claims. Dkt. 27. U.S. Fire contends that

14   the faulty workmanship exclusion precludes coverage and that there is no coverage for

15   damage caused by ice unless the warehouses were damaged by a covered cause of loss.

16   Terminal Freezers seeks partial summary judgment, contending that California law

17   governs this suit (Dkt. 28) and that there is no genuine issue of material fact as to

18   causation (Dkt. 30).

19                  **II. CHOICE OF LAW**

20         In suits arising under the Court's diversity jurisdiction, the Court must determine

21   whether to apply the law of the forum state or the law of another state. *See Kohlrautz v.*

22   *Oilmen Participation Corp*., 441 F.3d 827, 833 (9th Cir. 2006). To make this

23   determination, the Court applies the choice of law rules of the forum state. *Id.*

24   Washington law presumptively applies. *See Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676,

25   692 (2007).

26

27

28

1    Washington employs a two-step approach to choice of law questions. First,

2    Washington choice of law principles require the application of Washington law unless

3    there is an "actual conflict" with another applicable body of law. *Burnside v. Simpson*

4    *Paper Co.*, 123 Wn.2d 93, 103 (1994). Second, if there is a conflict, Washington uses a

5    "most significant relationship" test. *See Mulcahy v. Farmers Ins. Co.*, 152 Wn.2d 92, 100

6    (2004) (contract); *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 213 (1994) (tort).

7    For contract claims, the test focuses on the place of contracting, negotiation,

8    performance, the subject matter, and the parties. *Mulcahy*, 152 Wn.2d at 100-101. For tort

9    claims, the test focuses on the place where the tortious conduct occurred, where the injury

10   occurred, where the parties are located, and where the parties' relationship is "centered."

11   *Rice*, 124 Wn.2d at 213.

12       **1.    Actual Conflict**

13   An "actual conflict" exists between Washington law and the laws or interests of

14   another state if application of the various states' laws could produce diverging outcomes

15   on the same legal issue. *Erwin*, 161 Wn.2d at 692. Under Washington law, an insured is

16   entitled to recover attorneys' fees incurred in any legal action to obtain the full benefit of

17   the insurance contract. *See Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37,

18   53 (1991). In California, an insured may recover attorneys' fees only when pursuing a bad

19   faith claim in tort. *See Archdale v. American Intern. Specialty Lines Ins. Co.*, 64 Cal.

20   Rptr. 3d 632, 647 n.19 (2007). The Court therefore concludes that there is an actual

21   conflict between California and Washington law.

22       **2.    Significant Relationship**

23   To determine whether Washington or California has the most significant

24   relationship to the underlying transaction and to the parties in this matter, the Court is

25   guided by Section 188 of the Restatement of Conflict of Laws, which provides as follows:

26           (2) In the absence of an effective choice of law by the parties (see §
             187), the contacts to be taken into account in applying the principles of § 6
27       to determine the law applicable to an issue include:
             (a) the place of contracting,

28

(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and
place of business of the parties.
These contacts are to be evaluated according to their relative
importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188(2) (1971); *Mulcahy*, 152 Wn.2d at 100-

101.

The insurance policy underlying this matter was researched and brokered by

Parker Smith and Feek on behalf of Terminal Freezers. Dkt. 29 at 2. Representatives of

Terminal Freezers and Parker Smith and Feek did not travel to California to negotiate or

discuss the purchase of the policy; all discussions regarding the policy took place in

Washington. *Id*. The Court therefore concludes that Washington is the place of

contracting.

Payments for the policy were made from Washington, and copies of the policies

were sent to the Terminal Freezers headquarters in Burlington, Washington. *Id*. These

facts weigh in favor of finding that the policy was performed in Washington. Also

relevant to this factor, however, is the fact that adjustment of the claimed loss allegedly

took place in California. Dkt. 33 at 1. The Court concludes that Washington is the place

of performance.

The loss and the insured property were located in Oxnard, California. The Court

therefore concludes that the subject matter is located in California.

Terminal Freezers is a Washington corporation with its headquarters in Burlington,

Washington. Dkt. 29 at 1. Terminal Freezers owns facilities in Burlington, Washington;

San Antonio, Texas; Salem, Oregon; Oxnard, California; and Watsonville, California. *Id*.

U.S. Fire is a Delaware corporation with its principal place of business in New Jersey.

Dkt. 1 at 2; Dkt. 34 at 2. U.S. Fire does not maintain any offices or employees in

Washington. Dkt. 34 at 2.

1    These factors are weighed differently according to their importance. Restatement

2    (Second) of Conflict of Laws § 188(2) (1971). U.S. Fire urges the Court to conclude that

3    Washington is merely the location of "ministerial acts" and analogizes this case to

4    *Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 492-95 (1996), in which the court

5    concluded that merely negotiating and entering the insurance contract in Quebec, Canada

6    was insufficient to establish that Quebec had the most significant relationship. The Court

7    finds *Canron* to be of limited assistance.

8    First, in *Canron*, neither party was a Quebec corporation. *Canron, Inc.*, 82 Wn.

9    App. at 493. In this case, Terminal Freezers is a Washington corporation. Second, while

10   the insured's executive offices were located in Quebec at the time the contract was

11   entered into, the Quebec office ultimately merged with an office located in Ontario,

12   Canada. *Id.* In this case, Terminal Freezer's headquarters are located in Washington.

13   Third, the *Canron* claims were handled from New Jersey and Los Angeles. *Id.* In this

14   case, U.S. Fire asserts, without evidentiary support, that the claim was adjusted in

15   California. Dkt. 33 at 1. Fourth, Canron's executives testified that they expected the law

16   of the state in which the loss occurred to apply to coverage disputes. *Canron, Inc.*, 82 Wn.

17   App. at 493. In this case, it is unclear whether Terminal Freezers executives expected

18   California or Washington law to apply to coverage disputes. Fifth, the subject matter in

19   *Canron* was located in British Columbia. *Id.* at 494. Here, the subject matter is located in

20   California. Finally, the loss in *Canron* involved a superfund site located in Washington.

21   The court noted that Washington had "a paramount interest in the health and safety of its

22   people" and that the existence of insurance coverage proceeds could determine whether

23   the site was remediated. *Id.* In this case, there is no evidence suggesting that California's

24   interest in the health and safety of its people are implicated by the loss.

25   The Court also considers the Restatement's "umbrella principles" under Section 6:

26       (1) A court, subject to constitutional restrictions, will follow a
         statutory directive of its own state on choice of law.

27       (2) When there is no such directive, the factors relevant to the
         choice of the applicable rule of law include

28

ORDER - 6

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative
interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be
applied.

Restatement (Second) Conflict of Laws § 6 (1971). Neither party has addressed these considerations in detail. With respect to the Section 6 factors, the Court notes that the policy behind allowing insured parties to recover attorneys' fees incurred when seeking to obtain the full benefit of the insurance contract is in recognition of the disparity of bargaining power between the insurer and the insured and the nature of the contract, under which the insured "seeks protection from expenses arising from litigation, not vexatious, time-consuming, expensive litigation with his insurer." *Olympic S.S. Co., Inc.*, 117 Wn.2d at 52. Washington allows the recovery of attorneys' fees because "the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is . . . burdensome to the insured" and because Washington seeks to "encourage the prompt payment of claims." *Id.* at 53. Consideration of Washington's policy behind allowing insured parties to recover attorneys' fees for legal action to obtain the benefit of their insurance contracts weighs in favor of applying Washington law.

The Court's analysis of the parties' expectations is hindered because neither party has submitted evidence as to its expectations. The Court notes, however, that the parties could have preserved their expectations through a choice of law provision.

With respect to certainty, predictability, and uniformity of the result, applying Washington law would avoid the potential inconsistencies resulting from applying the law of the state in which the loss occurred.

Having considered and weighed the factors under Sections 6 and 188 of the Restatement of Conflict of Laws, the Court concludes that Washington law applies in this matter.

1

## II. SUMMARY JUDGMENT

2

**A.    STANDARD**

3      Summary judgment is proper only if the pleadings, the discovery and disclosure

4   materials on file, and any affidavits show that there is no genuine issue as to any material

5   fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

6   The moving party is entitled to judgment as a matter of law when the nonmoving party

7   fails to make a sufficient showing on an essential element of a claim in the case on which

8   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

9   (1985).  There is no genuine issue of fact for trial where the record, taken as a whole,

10   could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

11   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

12   present specific, significant probative evidence, not simply "some metaphysical doubt").

13   *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

14   there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

15   jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

16   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

17   626, 630 (9th Cir. 1987).

18      The determination of the existence of a material fact is often a close question. The

19   Court must consider the substantive evidentiary burden that the nonmoving party must

20   meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

21   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

22   issues of controversy in favor of the nonmoving party only when the facts specifically

23   attested by that party contradict facts specifically attested by the moving party. The

24   nonmoving party may not merely state that it will discredit the moving party's evidence at

25   trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

26   *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific

27

28

statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    DISCUSSION**

In Washington, the determination of insurance coverage is a two-step process. *Diamaco, Inc. v. Aetna Cas. & Sur.*, 97 Wn. App. 335, 337 (1999). The party seeking to establish coverage bears the initial burden to prove that coverage under the policy has been triggered. *Id.* If coverage is triggered, the insurer then bears the burden to prove that the loss is specifically excluded by the policy language. *Id.* If coverage is not triggered, the court does not proceed to address any exclusions from coverage. *Western Nat'l Assur. v. Hecker*, 43 Wn. App. 816, 823 n.2 (1986).

Interpretation of insurance policies is a question of law, and courts construe insurance policies as a whole, giving force and effect to each clause in the policy. *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d 131 (1994). If the policy language is clear and unambiguous, the court will not modify the policy or create an ambiguity. *Id.* at 874. If the policy language is fairly susceptible to two different reasonable interpretations, it is ambiguous, and the court may attempt to discern the parties' intent by examining extrinsic evidence. *Id.* If the policy remains ambiguous after resort to extrinsic evidence, the court construes the ambiguities against the insurer. *Id.* at 874-75.

**1.    Coverage**

The first substantive question presented by the parties' motions is whether coverage under the U.S. Fire "all risks" policies was triggered. *See Diamaco, Inc.*, 97 Wn. App. at 337. The burden of proving that coverage is triggered rests with Terminal Freezers. *See id.*

An all risks insurance policy generally affords recovery for losses considered "fortuitous." *City of Oak Harbor v. St. Paul Mercury Ins. Co.*, 139 Wn. App. 68, 73 (2007). In every all risks policy, fortuity is essentially an implied exclusion. *See*

1    *Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.*, 790 F. Supp.

2    1043, 1046 (E.D. Wash. 1991). Fortuity is required as a matter of public policy because

3    permitting recovery on insurances losses that are certain to occur would encourage fraud.

4    *See Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182, 1188 (W.D. Wash. 2002).

5        Washington courts consider the following when tasked with determining whether a

6    loss is fortuitous:

7        (a) a loss which was certain to occur cannot be considered fortuitous,
         and may not serve as the basis for recovery under an all-risk insurance
8        policy;
         (b) in deciding whether a loss was fortuitous, a court should examine
9    the parties' perception of risk at the time the policy was issued;
         (c) ordinarily, a loss which could not reasonably be foreseen by the
10   parties at the time the policy was issued is fortuitous.

11   *Frank Coluccio Const. Co., Inc. v. King County*, 136 Wn. App. 751, 768 (2007). While

12   proving fortuity is a "condition precedent to coverage," the burden of proving fortuity is

13   not particularly onerous. *Id.* The test for determining fortuity is subjective and involves

14   questions of fact. *Id.*

15       In Plaintiff's Motion for Summary Judgment on Causation, Terminal Freezers

16   impliedly acknowledges that the loss in this case, ice buildup due to freezing water vapor,

17   is generally foreseeable:

18       Water vapor presents a risk of loss to cold storage warehouses.
         Installation of a vapor barrier is the method of combating this risk. . . . One
19       can go to Google and enter the search phrase: "cold storage" &
         condensation. Thousands of listings appear on a range of topics but it
20       becomes immediately clear that water vapor, condensation, and ice present
         very serious issues for the operators of cold storage facilities.
21
22   Dkt. 30 at 6. Presumably, Terminal Freezers' facility was constructed with vapor

23   retardants precisely because damage due to freezing water vapor was foreseeable. Due to

24   the use of vapor retardants, the Court cannot conclude that the risk of damage from water

25   vapor was certain or sufficiently foreseeable such that the loss was not fortuitous.

26

27

28

ORDER - 10

1

        2.      **Faulty Workmanship Exclusion**

2          Having determined that the loss in this case was fortuitous such that Terminal

3    Freezers has satisfied its burden of establishing that coverage is triggered, the Court now

4    turns to U.S. Fire's contention that coverage is barred by the faulty workmanship

5    exclusion and the ice limitation.

6          U.S. Fire seeks summary judgment on the grounds that Terminal Freezers' loss is

7    attributable to faulty workmanship and is therefore excluded from coverage. Dkt. 27 at 9-

8    11. Terminal Freezers seeks partial summary judgment, contending that this exception

9    does not apply because the damage resulting from the faulty workmanship resulted in a

10   Covered Cause of Loss. Dkt. 30 at 1-2.

11         The U.S. Fire policies excluded losses resulting from faulty workmanship as

12   follows:

13                 3. We will not pay for loss or damage caused by or resulting from any
             of the following, 3.a. through 3.c. But if an excluded cause of loss that is
14           listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for
             the loss or damage caused by that Covered Cause of Loss.
15                                              ***
                 c.      Faulty, inadequate or defective:
16                                              ***
                 (2) Design, specifications, workmanship, repair, construction,
17           renovation, remodeling, grading, compaction;
                 (3) Materials used in repair, construction, renovation or remodeling;
18           or
                 (4)  Maintenance;
19           of part or all of any property on or off the described premises.

20   Dkt. 26-9, Exh. 4 at 13.

21         To determine whether Terminal Freezers' loss was "caused by or resulting from"

22   defective construction, the Court is aided by the "efficient proximate cause rule."

23   Washington has adopted the "efficient proximate cause rule," by which recovery is

24   allowed for a final event excepted from coverage but attributable to a chain of causation

25   started by a risk that is not excepted from coverage. *Allstate Ins. Co. v. Raynor*, 143

26   Wn.2d 469, 479-80 (2001). The rule has been stated as follows: "Where a peril

27   specifically insured against sets other causes in motion which, in an unbroken sequence

28

and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the 'proximate cause' of the entire loss." *Id.* at 479. The efficient proximate cause rule applies only if two or more independent forces operate to cause the loss. *Kish v. Insurance Co. of North America*, 125 Wn.2d 164, 171 (1994). If the loss is the result of only a single cause, even one susceptible to various characterizations, the efficient proximate cause analysis does not apply. *Id.* If the efficient proximate cause rule applies, determining which event constitutes the efficient proximate cause is normally a question of fact for the jury but it may be decided as a question of law if "the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion." *See Raynor*, 143 Wn.2d at 480 n.10.

The parties contest whether the water vapor or the defective construction constitutes the efficient proximate cause of Terminal Freezers' loss. Dkt. 30 at 12; Dkt. 32 at 8. Curiously, Terminal Freezers admits that "[t]here is no question but that water vapor entered the concrete walls of the freezer and then migrated upwards damaging the wall and ceiling insulation and tiles due to the fact that the vapor barrier was incorrectly installed" but concludes that "[t]he water vapor started the chain of events." Dkt. 30 at 12.

In this case, the facts are undisputed and the inferences to be drawn from those facts are indisputable. To conclude, as Terminal Freezers contends, that the presence of water vapor initiated a chain of causation and that defective construction of the water vapor barriers was but a link in the chain is nonsensical. The efficient proximate cause of the loss in this case is the defective construction of the water vapor barriers, which facilitated entry of water vapor, which froze and resulted in substantial ice buildup.

### 3.    Ice Limitation

Having determined that Terminal Freezers' loss was caused by or resulted from defective construction of the water vapor barriers, the Court now addresses whether the faulty workmanship resulted in a Covered Cause of Loss. The policies specifically provide that "if an excluded cause of loss [such as defective construction] results in a

1    Covered Cause of Loss, [U.S. Fire] will pay for the loss or damage caused by that

2    Covered Cause of Loss." Dkt. 26-9, Exh. 4 at 13.

3        U.S. Fire contends that the ice buildup is not a Covered Cause of Loss because it is

4    covered by the limitation regarding loss or damage caused by ice. *See* Dkt. 29-6, Exh. 4 at

5    14-15. Terminal Freezers refutes this assertion by contending that "ice" does not refer to

6    frozen water vapor and should be defined to encompass only "an element of the weather."

7    Dkt. 30 at 14.

8        A "Covered Cause of Loss" excludes losses limited by the "Limitations" section.

9    Dkt. 26-9, Exh. 4 at 11. U.S. Fire contends that there is no covered cause of loss in this

10    case due to the limitation governing ice:

11            The following limitations apply to all policy forms and
        endorsements, unless otherwise stated.
12            1. We will not pay for loss of or damage to property, as described
        and limited in this section. In addition, we will not pay for any loss that is a
13        consequence of loss or damage as described and limited in this section.
                            ***
14            c. The interior of any building or structure, or to personal property
        in the building or structure, caused by or resulting from rain, snow, sleet,
15        ice, sand or dust, whether driven by wind or not, unless:
            (1) The building or structure first sustains damage by a Covered
16        Cause of Loss to its roof or walls through which the rain, snow, sleet, ice,
        sand or dust enters; or
17            (2) The loss or damage is caused by or results from thawing of
        snow, sleet or ice on the building or structure.

18    *Id.* at 14-15.

19        Insurance policies are construed as a whole and are given a fair, reasonable, and

20    sensible construction consistent with the understanding of an average person purchasing

21    insurance. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575 (1998). Courts

22    examine the terms of an insurance contract to determine whether there is coverage under

23    the plain meaning of the contract. *Id.* at 576. Terms left undefined by the insurance

24    contract are given their "plain, ordinary, and popular" meaning. *Id.*

25        In this case, the term "ice" is not defined by the insurance policies and must be

26    accorded its plain meaning. In its briefing, Terminal Freezers acknowledges that the plain

27    meaning of "ice" is "frozen water" but urges the Court to define the word more narrowly

28

ORDER - 13

1    in light of the other words in the clause. Terminal Freezers draws the Court's attention to

2    the words "rain, snow, [and] sleet." Terminal Freezers contends that because these words

3    are defined in terms of weather, the word "ice" should be defined similarly. This

4    argument does not account for the words "sand or dust" and is not persuasive. Given its

5    plain meaning, the limitation regarding damage caused by ice applies to Plaintiff's loss

6    and bars coverage.

7    **C.    CONCLUSION**

8         Because Plaintiff utilized vapor retardants to prevent precisely the loss that

9    occurred here, the Court concludes that the claimed loss is fortuitous. Plaintiff has

10   therefore met its burden of establishing that coverage under Defendant's policies was

11   triggered.

12        The burden then shifts to Defendant to demonstrate that an exclusion bars

13   coverage. For the reasons stated above, the Court concludes that the efficient proximate

14   cause of Plaintiff's loss was the undisputedly defective construction of the facility's water

15   vapor barrier, an excluded cause. Due to the role that defective construction played in

16   Plaintiff's loss, Plaintiff is not entitled to coverage unless the defective construction

17   resulted in a Covered Cause of Loss. The Court is not persuaded that the defective

18   construction resulted in a Covered Cause of Loss because the policy limitation regarding

19   damage caused by ice, given its plain meaning, applies to Plaintiff's loss and precludes

20   coverage.

21                                **IV. ORDER**

22        Therefore, it is hereby

23        **ORDERED** that Defendant U.S. Fire Insurance Company's Motion for Summary

24   Judgment (Dkt. 27) is **GRANTED**, Plaintiff's Motion for Summary Judgment on Choice

25

26

27

28

of Law (Dkt. 28) is **GRANTED**, Plaintiff's Motion for Summary Judgment on Causation

(Dkt. 30) is **DENIED**; and Plaintiffs claims are **DISMISSED with prejudice**.

DATED this 23rd day of June, 2008.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 15